IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TROY RONCONE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-2526-L |
| | § | |
| THE UNIVERSITY OF TEXAS | § | |
| SOUTHWESTERN MEDICAL | § | |
| CENTER, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Defendant The University of Texas Southwestern Medical Center ("UTSW") has filed a Motion to Dismiss. *See* Dkt. No. 11.

Plaintiff Troy Roncone filed a response in opposition to UTSW's Motion, *see* Dkt. No. 15, and UTSW filed a reply, *see* Dkt. No. 17.

United States District Judge Sam A. Lindsay has referred this motion to the undersigned United States Magistrate Judge for findings, conclusions, and recommendation under 28 U.S.C. § 636(b). *See* Dkt. No. 14.

For the reasons explained below, the Court should grant UTSW's Motion and dismiss Roncone's claims without prejudice [Dkt. No. 11].

## Background

Plaintiff Troy Roncone asserts claims for violations of the Family and Medical Leave Act ("FMLA"). *See* Dkt. No. 8.

Case 3:23-cv-02526-L    Document 18    Filed 11/18/24    Page 2 of 17    PageID 123

Roncone alleges that he was employed as a facility foreman for UTSW beginning in or about December 2020, *see id.* at 2, and that he entered into a common law marriage in July 2022, *see id.* at 2-3.

In December 2022, Roncone's purported wife began experiencing severe stomach pain, requiring multiple emergency room visits and gall bladder surgery. See *id.* at 3. Roncone requested FMLA forms from his supervisor at UTSW to take time off to assist with his wife's recovery. *See id.* Roncone's supervisor denied the request and advised him that he did not qualify for FMLA benefits because he was not legally married. *See id.*

Roncone alleges that he took several absences during December 2022 to April 2023 to care for his wife and notified his supervisor of each absence. *See id.* After the initial surgery discovered precancerous conditions, Roncone's wife underwent additional surgery. *See id.* From April 11 to April 16, 2023, Roncone stayed at the hospital to assist her. *See id.* During that time, Roncone exhausted his paid time off and took several days of unpaid leave. *See id.*

UTSW terminated his employment for unexcused absences at the end of April. *See id.* His appeals to rescind his termination were unsuccessful. *See id.* But, on May 1, 2023, Roncone submitted a request for FMLA leave to retroactively cover the period from April 11 to April 16, 2023. *See id.* He also requested FMLA leave through August 2023. *See* Dkt. No. 13 at 3-15. Both requests were approved. *See id.*

Roncone alleges that UTSW interfered with Roncone "in the exercise of his FMLA rights by failing to inform him of his right to FMLA leave ... when he

approached his supervisor in December 2022 seeking to care for his wife." Dkt. No. 8 at 5. And he alleges that UTSW discriminated against him by "dismissing [him] from work following medical leave when he independently learned of his rights, and applied for FMLA coverage on May 1, 2023." *Id.* at 6.

Roncone amended his complaint after UTSW filed its first motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see* Dkt. Nos. 7 & 8, which the Court denied as moot, *see* Dkt. No. 10. UTSW then filed this Motion to Dismiss [Dkt. No. 11].

## Legal Standards

In deciding a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.' " (quoting *Iqbal*, 556 U.S. at 679)); *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

As these cases reflect, Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.' " (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

And, so, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities*, 920 F.3d at 899 (" 'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' " (quoting *Iqbal*, 556 U.S. at 679; citation omitted)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice

at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.' " *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central

to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

## Analysis

The Court should dismiss Roncone's claims without prejudice because he does not sufficiently allege facts establishing FMLA interference and discrimination.

Roncone alleges that UTSW interfered with his rights under the FMLA in violation of 29 U.S.C. § 2615(a)(1) by "failing to inform him of his right to FMLA leave as required under DOL regulations when he approached his supervisor in December 2022 seeking to care for his wife." Dkt. No. 8 at 5. And he alleges UTSW "discriminated and/or interfered by dismissing him from work following medical leave." *Id.* at 6.

"The FMLA creates two types of protections – entitlement rights (sometimes also called prescriptive rights) and proscriptive rights." *Martin v. Penske Logistics*, LLC, No. 3:23-cv-574-B, 2024 WL 2853951, at *6 (N.D. Tex. June 4, 2024) (citing *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 526 (5th Cir. 2021)).

An employee who brings an interference claim asserting the denial of entitlement rights under the FMLA need not establish discriminatory intent to prevail. *See Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 580 (5th Cir. 2006) ("Because the issue is the right to an entitlement, the employee is due the

benefit if the statutory requirements are satisfied, regardless of the intent of the employer." (cleaned up)).

Proscriptive rights "protect[ ] employees from retaliation or discrimination for exercising their rights under the FMLA." *Id.* And, so, an interference claim brought complaining of an employer's violation of an employee's proscriptive rights requires a showing of intentional discrimination. *Haley v. All. Compressor LLC*, 391 F.3d 644, 650-51 (5th Cir. 2004); *see also DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 491 (5th Cir. 2018); *Campos*, 10 F.4th at 527-30.

As discussed below, Roncone fails to plead sufficient facts to allege FMLA interference or discrimination claims.

## I.    <u>FMLA Interference Claim</u>

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under the [FMLA]." 29 U.S.C. § 2615(a)(1); *see also Martin*, 2024 WL 2853951, at *6.

"To establish a prima facie case of interference under FMLA, a plaintiff must show: (1) he was an eligible employee; (2) his employer was subject to the FMLA's requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave, and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Blakely v. GoLabs, Inc.*, No. 3:21-cv-2422-L, 2023 WL 6139456, at *10 (N.D. Tex. Aug. 17, 2023); *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

UTSW contends that Roncone fails to state a FMLA interference claim because he fails to sufficiently allege (1) that he was entitled to FMLA leave, (2) that he gave proper notice of his intention to take FMLA leave, and (3) that his employer denied him the benefits to which he was entitled under the FMLA. *See* Dkt. No. 11 at 6-11.

The FMLA provides eligible employees a total of twelve workweeks of leave during any twelve-month period "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C).

"The term 'spouse' means a husband or wife, as the case may be." § 2611(13). The Department of Labor further clarifies the term:

> [H]usband or wife refers to the other person with whom an individual entered into marriage as defined or recognized under state law for purposes of marriage in the State in which the marriage was entered into or, in the case of a marriage entered into outside of any State, if the marriage is valid in the place where entered into and could have been entered into in at least one State. This definition includes an individual in a same-sex or common law marriage that either:
>
> (1) Was entered into in a State that recognizes such marriages; or
> (2) If entered into outside of any State, is valid in the place where entered into and could have been entered into in at least one State.

29 C.F.R. § 825.102.

And, so, when a couple enters a common law marriage in Texas, one spouse may apply for FMLA leave to care for the other. *See id.*; *see also* § 2612(a)(1)(C).

Under Texas law, one way to enter into a valid marriage is by an informal marriage, also known as a common law marriage. *See* TEX. FAM. CODE § 2.401(a); *Stuberg v. Colvin*, No. 3:15-cv-3505-D, 2016 WL 3745681, at *2 (N.D. Tex. July 13,

2016). The existence of a common law marriage is "closely scrutinized by the courts." *Brooks v. State*, 686 S.W.2d 952, 954 (Tex. Crim. App. 1985).

A common law marriage exists if the parties can show that: (1) they agreed to be married, (2) lived together as husband and wife, and (3) represented to others that they were married. *See* TEX. FAM. CODE § 2.401(a)(2); *see also Burden v. Burden*, 420 S.W.3d 305, 308 (Tex. App. – Texarkana 2013, no pet.). "An informal marriage does not exist until the concurrence of all three elements." *Stuberg*, 2016 WL 3745681, at *2 (quoting *In re C. M. V.*, 479 S.W.3d 352, 360 (Tex. App. – El Paso 2015, no pet.). "These three elements can be proved by direct or circumstantial evidence." *Id.*

As discussed below, Roncone's pleadings do not sufficiently demonstrate that he was entitled to FMLA leave because he fails to allege sufficient facts from which the Court may infer that he entered into a common law marriage.

## A. **Agreement to Marry**

An agreement to marry is present when each party "intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife." *Eris v. Phares*, 39 S.W.3d 708, 714 (Tex. App. – Houston [1st Dist.] 2001, pet. denied) (citing *Burden v. Burden*, 420 S.W.3d 305, 308 (Tex. App. – Texarkana 2013, no pet.). "An agreement to be married cannot be inferred from the mere evidence of cohabitation and representations of marriage to others, but such evidence may be circumstantial evidence of an agreement to be married." *In re C. M. V.*, 479 S.W.3d at 360 (citing *Russell v. Russell,* 865 S.W.2d 929, 933 (Tex. 1993)).

Roncone alleges that he "entered into a common law marriage in approximately July 2022." Dkt. No. 8 at 2. He states that, "at that time, he and his spouse (i) agreed to be married (ii) began living together, and (iii) began representing to third parties that they were married." *Id.* at 2-3. He then alleges that, after his purported spouse began experiencing stomach pain requiring several emergency-room visits and eventual surgery, he requested FMLA forms from his supervisor to care for her. *See id.* at 3. And Roncone's supervisor denied his request because he was not "'legally' married." *Id.* But his supervisor requested that he keep them informed of absences pertaining to his purported spouse's health. *See id.*

UTSW asserts that Roncone "fails to allege sufficient facts to support that he was married under Texas law." Dkt. No. 11 at 11. UTSW adds that Roncone "blanketly asserts the three elements of common-law marriage without alleging any facts to support any of the elements." *Id.*

Specifically, UTSW argues that Roncone's claims "that in one particular month, July 2022, he and his 'common-law' spouse 'agreed' to be married" is a legal conclusion supported with "zero facts." *Id.*; *see In re O.R.M.*, 559 S.W.3d 738, 744-45 (Tex. App. – El Paso 2018, no pet.) ("The couple's cohabitation and [one Party's] reference to [the other] as her husband is insufficient to prove, as a matter of law, an agreement to be married.").

The undersigned agrees with UTSW because Roncone's factual allegations are insufficient to allow the undersigned to draw a reasonable inference that Roncone agreed to be married.

And, so, Roncone has not satisfied this element required to show a common law marriage exists.

### B. <u>Living Together as Husband and Wife</u>

To establish a valid common law marriage, the parties must also live together as husband and wife after agreeing to be married. *See* TEX. FAM. CODE § 2.401(a). Cohabitation "need not be continuous for a couple to enter into a common-law marriage." *Small v. McMaster*, 352 S.W.3d 280, 284 (Tex. App. – Houston [14th Dist.] 2011, pet. denied). Sufficient cohabitation is determined on a case-by-case basis. *See Omodele v. Adams*, No. 14-01-00999-CV, 2003 WL 133602, at *2 (Tex. App. – Houston [14th Dist.] 2003, no pet.). And, like the other two elements of common law marriage, it "is a question of fact." *Faglie v. Williams*, 569 S.W.2d 557, 565 (Tex. App. – Austin 1978, writ ref'd n.r.e.).

Roncone alleges that, in July 2022, he and his spouse "begin living together." Dkt. No. 8 at 2. He states that, in December 2022, he needed to "take time off to assist her in recovery" after undergoing surgery. *Id.* at 3. And, after the first "surgery discovered precancerous conditions that necessitated more surgery," he "exhausted all of his PTO and had to take several days of unpaid leave." *Id.*

UTSW asserts that Roncone's pleading is insufficient because he "does not allege where he and his wife started living together" and fails to show "how living together was not mere cohabitation." Dkt. No. 11 at 10.

The undersigned agrees with UTSW because Roncone fails to allege sufficient facts to show he and his purported spouse lived together after allegedly marrying.

Apart from his statements that they "began living together" after "enter[ing] into a common law marriage in approximately July 2022," Roncone's pleadings allege no facts to support a reasonable inference that they lived together as husband and wife. *Cf. Winfield v. Renfro*, 821 S.W.2d 640, 646–48 (Tex. App. – Houston [1st Dist.] 1991, writ denied).

And, so, Roncone has not established this common law marriage element.

## C. <u>Representation to Others as Married</u>

To satisfy the third element, a party must show that the couple "represented to others that they were married." *Thomas v. Doolittle*, No. 03-23-00498-CV, 2024 WL 4394315, *8 (Tex. App. – Austin Oct. 4, 2024) ("[t]he statutory requirement of 'represented to others' in subsection 2.402(a)(2) is synonymous with 'holding out to the public.') (quoting *Eris*, 39 S.W.2d at 714).

The analysis "turns on whether the couple had a reputation in the community for being married." *Small*, 352 S.W.3d at 285. And "[p]roving such a reputation requires that the couple consistently conducted themselves as husband and wife in the public eye or that the community viewed them as married." *Id.* (cleaned up).

Establishing representation requires showing "more than occasional references to each other as 'wife' and 'husband.'" *Thomas*, 2024 WL 4394315, at *8; *Smith v. Deneve*, 285 S.W.3d 904, 910 (Tex. App. – Dallas 2009, no pet.). But representation can be shown "by conduct and actions of the parties. Spoken words are not necessary to establish representation as husband and wife." *Id.*

Roncone alleges that, after entering a common law marriage in July 2022, he and his purported spouse "began representing to third parties that they were married." Dkt. No. 8 at 2-3. In December 2022, Roncone's request for FMLA leave "to care for his wife" was denied by his supervisor, who claimed Roncone was not "'legally' married." *Id.* at 3.

In April 2023, Roncone "exhausted all of his PTO and had to take several days of unpaid leave" to assist his purported wife in recovering from surgery but kept his supervisor "apprised of things as he had been told do." *Id.* After being notified of his termination for unexcused absences, Roncone completed FMLA forms requesting retroactive leave. *Id.* And, on May 18, 2023, UTSW notified Roncone that he was "eligible and approved" for FMLA leave because of a "serious health condition – spouse." *See* Dkt. No. 13 at 13-15.

Here, Roncone's pleadings are sufficient to show he represented to others that he was married because Roncone has done more than recite this element of common law marriage. He talked about his purported spouse with his supervisor, and he notified his supervisor regarding absences due to assisting with his purported spouse's medical recovery. *See* Dkt. No. 8 at 3. And, based on those representations, UTSW approved his request for FMLA leave. *See* Dkt. No. 13 at 13-15.

But, as discussed above, Roncone fails to allege sufficient facts to establish that he agreed to be married or lived together while married. Because those common law marriage elements are not satisfied, Roncone has not alleged facts to show or permit

a reasonable inference that he entered into a common law marriage. And, as a result, Roncone has not demonstrated that he was entitled to FMLA leave.

And, so, Roncone's interference claim fails without addressing the other required elements and the Court should dismiss it without prejudice.

## II.    **FMLA Discrimination Claim**

To state a prima facie case for discrimination or retaliation under FMLA, a plaintiff must show "(1) he is protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave." *Hester*, 11 F.4th at 305.

Roncone alleges that UTSW discriminated against him "by dismissing [him] from work following medical leave when he independently learned of his rights, and applied for FMLA coverage on May 1, 2023." Dkt. No. 8 at 6. He also alleges further discrimination based on UTSW's failure to reinstate following the use of leave. *See id*.

UTSW argues that, because Roncone "fails to plead sufficient facts to show that he was entitled to FMLA leave," he is not subject to FMLA protection. *See* Dkt. No. 11 at 15-16.

In response, Roncone alleges that he is protected under the FMLA due to his common law marriage. *See* Dkt. No. 15 at 9.

But, as discussed above, Roncone's interference claim fails because he pleads insufficient facts to demonstrate he was entitled to FMLA leave based on a common law marriage. And his discrimination claim fails for the same reason.

And, so, because Roncone has not shown that he is protected under the FMLA, the Court should dismiss his FMLA retaliation claim without prejudice.

## Conclusion

For the reasons explained above, the Court should grant UTSW's motion and dismiss Roncone's claims without prejudice [Dkt. No. 11]. The Court should grant Plaintiff 21 days from the date of any order adopting these Findings, Conclusions, and Recommendation in which to file a second amended complaint as to those claims that should be dismissed without prejudice and should order that, if Plaintiff fail to do so, the case will be dismissed with prejudice without further notice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     DATED: November 18, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE