IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TROY RONCONE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-cv-2526 |
| | § | |
| UNIVERSITY OF TEXAS | § | |
| SOUTHWESTERN MEDICAL CENTER, | § | |
| | § | |
| Defendant. | § | JURY TRIAL DEMANDED |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Troy Roncone ("Plaintiff" or "Roncone") complaining of Defendant University of Texas Southwestern Medical Center ("Defendant", or "UTSW"), and for causes of action respectfully shows the Court as follows:[1]

I.

**Introduction**

1.01   Plaintiff would show the Court that Defendant wrongfully fired him for taking time off to care for his common law wife in violation of the Family and Medical Leave Act of 1993. 29 U.S.C. § 2601, *et seq.*

II.

**Parties**

2.01   Plaintiff Troy Roncone is an individual who may be contacted in care of the undersigned counsel.  Plaintiff is a resident and citizen of the State of Texas.

---

[1] The Court approved leave to file this Second Amended Complaint in its Order dated December 2, 2024 (Doc. No. 19).

**Plaintiff's Second Amended Complaint**                                                                                                                                  Page 1

2.02   Defendant University of Texas Southwestern Medical School ("UTSW") is a state agency, or state instrumentality, including a public institution of education, and is an employer as defined in the FMLA (*See*, 29 U.S.C. § 2611, including "public agency" as employers, as defined in 29 U.S.C. § 203(e)(2)(C)(including employees of States or subdivisions of a State) and DOL regulations, including 29 C.F.R. § 825.104 ("Public agencies are covered employers without regard to the number of employees employed"). UTSW has appeared through the Attorney General's Office.

III.

**Jurisdiction and Venue**

3.01   Pursuant to 28 U.S.C. § 1331, jurisdiction of this Court is appropriate in the United States District Court for the Northern District of Texas, as this action involves a question of the application of federal law, namely the Family and Medical Leave Act of 1993. 29 U.S.C. § 2601, *et seq*.

3.02   Defendant UTSW may not assert Eleventh Amendment immunity for violation of the family care provisions of the FMLA, and is subject to an award of damages for violating the Act. *See, Nevada Department of Human Resources v. Hibbs,* 538 U.S. 721 (2003).

3.03   Venue for all causes of action stated herein lies in the Northern District of Texas because the acts alleged in this Complaint took place, in whole or in part, within the boundaries of this District pursuant to 28 U.S.C. §1391.

IV.

**Factual Allegations**

4.01   Plaintiff began working at UTSW as a facility foreman in or about December 2020. Plaintiff met Sabrina Becerra at work in approximately May 2021, and then began dating in

approximately January 2022. Over the next few months, he met her family. By June 2022, they both felt there were ready to move their relationship forward. At that time, Plaintiff went so far as to contact Sabrina's father, Andrew Martinez, and asked permission to move in with his daughter, since the house was formally owned by Mr. Martinez. Plaintiff represented that they would be living together as husband and wife. Mr. Martinez gave his blessings, and Plaintiff prepared to move in with Sabrina.

4.02    Plaintiff estimates he and Sabrina entered into a common law marriage in approximately July 2022. At that time, he and his spouse (i) agreed to be married, (ii) began living together, and (iii) began representing to third parties that they were married. *See*, Tex. Fam. Code § 2.401(a). At about that time, Plaintiff recommended Luis Gonzales, one of Sabrina's cousins, for a landscaping position at UTSW. When Gonzales got the job in July 2022, Plaintiff and Gonzales openly called each other "primo" (Spanish for "cousin") in front of other UTSW employees.

4.03    Plaintiff and Sabrina attended a wedding in Buffalo, NY in July 2022, and introduced themselves as husband and wife.

4.04    When Sabrina's daughter from an earlier marriage registered to begin school in the Fall of 2022, Sabrina completed paperwork showing Plaintiff was living with her and her daughter, and Plaintiff was described in the documentation as a Guardian and Step-Father.

4.05    By December 6, 2022, Sabrina appears in at least one photograph wearing a wedding ring.

4.06    Starting in approximately December 2022, Sabrina began having stomach pain, resulting in multiple trips to the emergency room and eventually led to gall bladder surgery. Since he needed to take time off to assist her in her recovery, Plaintiff requested FMLA forms to care for his wife from his supervisor, Audirak "Audi" De La Rosa. However, De La Rosa incorrectly advised

Plaintiff that he did not qualify for FMLA since his wife and Plaintiff were not "legally" married. De La Rosa did not provide Plaintiff with any FMLA forms at that time, but as to absences to care for his wife said, "let me know, and I will take care of it." Plaintiff relied on the representation of non-coverage in not pursuing FMLA leave further at the time, but still needed to take time off to care for his wife. Plaintiff kept in contact with his supervisor, and timely reported all absences.

4.07   The surgery discovered precancerous conditions that necessitated more surgery. Plaintiff's wife was in the hospital this time from April 11, 2023 until April 16, 2023. During that time, Plaintiff exhausted all of his PTO and had to take several days of unpaid leave. He kept De La Rosa apprised of things as he had been told to do.

4.08   On or about April 25, 2023, De La Rosa called Plaintiff into his office for a video chat with HR representative Cathy Payne ("Payne"). They told Plaintiff he would be terminated for unexcused absences. Plaintiff asked if he could apply for FMLA to cover the time, and Cathy informed him that FMLA followed Federal law, not state law, and she encouraged him to appeal his termination. Plaintiff investigated and learned that FMLA does, in fact, cover common-law marriage, so he completed the paperwork on May 1, 2023, and was approved on May 18, retroactively covering his time off to April 11, 2023.

4.09   In spite of the FMLA approval, De La Rosa and Payne told Plaintiff on May 22 that he was still being terminated for absences. Internal appeals that the time off dating to December was protected under the FMLA, or would have been had Defendant not interfered with the exercise of his leave rights by misinforming him of his rights, were unsuccessful, and Plaintiff was terminated on May 26, 2023. He now brings this action.

V.

First Count

**FAMILY AND MEDICAL LEAVE ACT OF 1993**

(Against All Defendants)

5.01.   The foregoing paragraphs of this Complaint are incorporated in this Count by reference as if set forth at length herein.

5.02   Plaintiff was an eligible employee under the FMLA.  Claimant had worked for Defendant UTSW for at least twelve (12) months and had worked at least 1,250 hours during the twelve (12) months prior to taking protected leave.

5.03   Defendant UTSW was subject to the provisions of the FMLA. UTSW was covered as a public agency as that term is defined under the statute. *See,* 29 U.S.C. § 2611(4)(A)(iii), including "public agency" as employers, as defined in 29 U.S.C. § 203(e)(2)(C)(including employees of States or subdivisions of a State). Defendant UTSW may not assert Eleventh Amendment immunity for violation of the family care provisions of the FMLA, and is subject to an award of damages for violating the Act.  *See, Nevada Department of Human Resources v. Hibbs,* 538 U.S. 721 (2003).

5.04   At the time he approached his supervisor in December, and again at the time of the discharge, Plaintiff's wife had suffered from one or more "serious health conditions" as defined by the FMLA.  29 U.S.C. § 2611(11).  In particular, she was suffering from symptoms which persisted for four or more days, and required the care of her physicians for treatment for these conditions. Further, her surgery required an overnight stay in the hospital.

5.05   Defendant interfered with Plaintiff in the exercise of his FMLA rights by failing to inform him of his right to FMLA leave as required under DOL regulations when he approached his supervisor in December 2022 seeking to care for his wife. See 29 C.F.R. §825.300(b)(requiring

written notice of Plaintiff's rights and obligations within five business days of notice of a qualifying condition). Since Defendant did not request Plaintiff to complete a medical certification at that time, or provide him with the necessary forms, he had no obligation to provide a medical certification at that time. *See*, 29 C.F.R. § 825.305; *see also*, *Branham v. Gannett Satellite Info. Network, Inc*., 619 F.3d 563, 573–74 (6th Cir. 2010)(failure to provide written notice of requirement to return medical certification in compliance with regulations relieved the requirement). Once an employee communicates a need to take leave for an FMLA-qualifying reason, neither the employee nor the employer may decline FMLA protection for that leave. *See*, 29 C.F.R. § 825.220(d).

5.06    Specifically, the FMLA entitled Plaintiff to up to 12 workweeks of leave during any 12-month period … "In order to care for the spouse … of the employee, if such spouse … has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). The FMLA definitions provide: "The term 'spouse' means a husband or wife, as the case may be." 29 U.S.C. § 2611(13). DOL regulations entitled to *Chevron* deference clarify:

> *Spouse*, as defined in the statute, means a husband or wife. For purposes of this definition, husband or wife refers to the other person with whom an individual entered into marriage as defined or recognized under state law for purposes of marriage in the State in which the marriage was entered into or, in the case of a marriage entered into outside of any State, if the marriage is valid in the place where entered into and could have been entered into in at least one State. *This definition includes an individual in a* same-sex or *common law marriage that either*:
>
> (1) *Was entered into in a State that recognizes such marriages*; or
>
> (2) If entered into outside of any State, is valid in the place where entered into and could have been entered into in at least one State.

29 C.F.R. § 825.102 (2023)(*emphasis added*). Plaintiff was prejudiced by the failure of Defendant to notify him of his rights, in that he was later fired allegedly for missing time caring for his spouse dating back to December.

5.07    Defendants further discriminated and/or interfered by dismissing Plaintiff from work

following medical leave when he independently learned of his rights, and applied for FMLA coverage on May 1, 2023. The FMLA application was approved as to the April absences, which Plaintiff at that time thought was the issue. The failure to reinstate following leave constitutes both interference with leave, and improper discrimination because of the use of leave. The temporal proximity between his protected leave and termination was very short, he was told absences was the motivation for the termination, the termination letter expressly mentioned absences as a motivation, and the absences from December 2022 had not previously been sufficient to warrant termination before the admittedly FMLA protected absences in April.

5.08   As a result of his termination by Defendants, Plaintiff has suffered significant financial loss, and the loss of salary and benefits of his employment, including health insurance for his wife.

5.09   The aforementioned acts were and are a willful violation of the FMLA and entitle Plaintiff to recover damages as provided by 29 U.S.C. §2617, including liquidated damages. Plaintiff further seeks reinstatement to his position or a comparable position with reinstatement of benefits and seniority time.

5.10   As a result of Defendant's actions, Plaintiff has found it necessary to hire the services of the undersigned attorneys, for which Plaintiff seeks further relief.

5.11   Plaintiff reserves the right to sue the individuals who fired him, as supervisors normally have personal liability for violations under the FMLA. *Modica v. Taylor*, 465 F.3d 174 (5th Cir. 2006).

VI.

**<u>Jury Trial Demanded</u>**

6.01   Plaintiff hereby demands trial by jury of all claims to which he is entitled.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that upon final trial, Plaintiff have and recover the following relief against Defendant.

(1)   Judgment for actual damages in the amount of past and future lost earnings and benefits, damages to past and future earnings capacity due to his wrongful termination, and past and future medical expenses for loss of his benefits;

(2)   Liquidated damages in an amount to be determined by the trier of fact;

(3)   An injunction ordering Plaintiff be reinstated to employment, or alternatively an award of future damages;

(4)   Prejudgment and post-judgment interest at the maximum legal rate;

(5)   Attorney's fees;

(6)   Experts fees;

(7)   All costs of court; and

(8)   Such other and further relief to which Plaintiff may be justly entitled.

DATE: December 20, 2024.

*Respectfully submitted,*

By:   */s/ John H. Crouch*
      JOHN. H. CROUCH, IV
      State Bar No. 00783906

KILGORE & KILGORE, PLLC
3141 Hood St., Suite 500

Dallas, Texas 75219<br>
(214) 969-9099 – Telephone<br>
(214) 379-0844 – Facsimile<br>
jhc@kilgorelaw.com

**ATTORNEYS FOR PLAINTIFF**
**TROY RONCONE**

## CERTIFICATE OF SERVICE

On December 20, 2024, I hereby certify that I have served all counsel and/or *pro se* parties of record a copy of the foregoing document by mailing it to their counsel of record, or by another manner authorized by Federal Rule of Civil Procedure 5 (b)(2) as indicated below:

**Via ECF**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

KIRSTIN M. ERICKSON                            Kirstin.Erickson@oag.texas.gov
Attorney in Charge
Assistant Attorney General
General Litigation Division

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

  /s/ John H. Crouch, IV  <br>
John H. Crouch, IV