IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TROY RONCONE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-2526-L-BN |
| | § | |
| THE UNIVERSITY OF TEXAS | § | |
| SOUTHWESTERN MEDICAL | § | |
| CENTER, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Defendant The University of Texas Southwestern Medical Center ("UTSW")

has filed a Motion to Dismiss. *See* Dkt. No. 25.

Plaintiff Troy Roncone filed a response in opposition to UTSW's Motion, *see*

Dkt. No. 35, and UTSW filed a reply, *see* Dkt. No. 36.

This case has been referred to the undersigned United States magistrate judge

for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference

from United States District Judge Sam A. Lindsay. *See* Dkt. No. 26.

For the reasons explained below, the Court should deny UTSW's Motion [Dkt.

No. 25] in its entirety.

**Procedural History and Background**

Prior orders have documented the background of this case. *See* Dkt. No. 18.

The information that follows is repeated here for reference and supplemented with

information relevant to the issues now presented before the Court.

Plaintiff Troy Roncone asserts claims for violations of the Family and Medical Leave Act ("FMLA"). *See* Dkt. No. 8.

Roncone alleges that he was employed as a facility foreman for UTSW beginning in or about December 2020, *see id.* at 2, and that he entered into a common law marriage in July 2022, *see id.* at 2-3.

In December 2022, Roncone's purported wife began experiencing severe stomach pain, requiring multiple emergency room visits and gall bladder surgery. See *id.* at 3. Roncone requested FMLA forms from his supervisor at UTSW to take time off to assist with his wife's recovery. *See id.* Roncone's supervisor denied the request and advised him that he did not qualify for FMLA benefits because he was not legally married. *See id.*

Roncone alleges that he took several absences during December 2022 to April 2023 to care for his wife and notified his supervisor of each absence. *See id.* After the initial surgery discovered precancerous conditions, Roncone's wife underwent additional surgery. *See id.* From April 11 to April 16, 2023, Roncone stayed at the hospital to assist her. *See id.* During that time, Roncone exhausted his paid time off and took several days of unpaid leave. *See id.*

UTSW terminated his employment for unexcused absences at the end of April. *See id.* His appeals to rescind his termination were unsuccessful. *See id.* But, on May 1, 2023, Roncone submitted a request for FMLA leave to retroactively cover the period from April 11 to April 16, 2023. *See id.* He also requested FMLA leave through August 2023. *See* Dkt. No. 13 at 3-15. Both requests were approved. *See id.*

Roncone alleges that UTSW interfered with Roncone "in the exercise of his FMLA rights by failing to inform him of his right to FMLA leave ... when he approached his supervisor in December 2022 seeking to care for his wife." Dkt. No. 8 at 5. And he alleges that UTSW discriminated against him by "dismissing [him] from work following medical leave when he independently learned of his rights, and applied for FMLA coverage on May 1, 2023." *Id.* at 6.

UTSW filed a previous motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 11. The undersigned recommended that the Court should grant the motion and dismiss Roncone's claims without prejudice because he failed to plead sufficient facts to show that he was entitled to FMLA leave based on a common law marriage. *See* Dkt. No. 18. The Court adopted the undersigned's recommendation and provided Roncone with the opportunity to amend his pleadings to cure the deficiencies. *See* Dkt. No. 19.

And, so, Roncone filed a Second Amended Complaint, in which he provides additional facts concerning his alleged common law marriage *See* Dkt. No. 20 at 3.

UTSW then moved to dismiss Roncone's Second Amended Complaint. *See* Dkt. No. 25.

The undersigned held oral argument on this motion to dismiss on May 20, 2025. *See* Dkt. No. 40.

## Legal Standards

In deciding a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true,

viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at 679)); *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890,

899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

As these cases reflect, Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

And, so, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities*, 920 F.3d at 899 ("'Determining whether a complaint states a plausible claim for relief'

is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citation omitted)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

### Consideration of Attached Exhibits

The undersigned must first address whether the Court should consider certain exhibits UTSW has attached to its motion to dismiss. *See* Dkt. No. 25-1 at 3-6.

When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of the motion to dismiss. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988). But "[i]f ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a

reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [their] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

UTSW attaches emails from Roncone to his supervisor regarding his absences from work to take care of his purported common law wife. *See* Dkt. No. 25-1 at 3-6. In the emails, Roncone refers to her as his "girlfriend" and "fiancé," which, in UTSW's view, contradicts his allegation that he sought leave for his common law wife.

UTSW contends that the Court can consider these emails because they are referenced in Roncone's complaint and central to his claims. *See* Dkt. No. 36 at 1-3. Specifically, UTSW points to Roncone's allegation that he "kept in contact with his supervisor, and timely reported all absences." Dkt. No. 20 at 4.

Roncone argues that this correspondence is not expressly referenced in his complaint and, so, should not be considered.

But, insofar as the correspondence is vaguely referenced in Roncone's complaint, the emails presented are more evidence of an element of his claim, rather than central to his claim. *See Kaye*, 453 B.R. at 662 ("However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint."); *see also*

*West v. R&K Enter. Sols.*, No. 3:23-cv-1371-G-BN, 2024 WL 3891533 (N.D. Tex. July 19, 2024).

And, so, the Court should not consider these emails [Dkt. No. 25-1 at 3-6] for purposes of this motion to dismiss. And, because the Court is not considering any exhibits outside the pleadings, the Court should not convert this motion to dismiss into a motion for summary judgment.

## Analysis

Roncone alleges that UTSW interfered with his rights under the FMLA in violation of 29 U.S.C. § 2615(a)(1) by "failing to inform him of his right to FMLA leave as required under DOL regulations when he approached his supervisor in December 2022 seeking to care for his wife." Dkt. No. 20 at 5. And he alleges UTSW "discriminated and/or interfered by dismissing [him] from work following medical leave when he independently learned of his rights, and applied for FMLA coverage." *Id.* at 5-6.

"The FMLA creates two types of protections – entitlement rights (sometimes also called prescriptive rights) and proscriptive rights." *Martin v. Penske Logistics*, LLC, No. 3:23-cv-574-B, 2024 WL 2853951, at *6 (N.D. Tex. June 4, 2024) (citing *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 526 (5th Cir. 2021)).

An employee who brings an interference claim asserting the denial of entitlement rights under the FMLA need not establish discriminatory intent to prevail. *See Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 580 (5th Cir. 2006) ("Because the issue is the right to an entitlement, the employee is due the

benefit if the statutory requirements are satisfied, regardless of the intent of the employer." (cleaned up)).

Proscriptive rights "protect[ ] employees from retaliation or discrimination for exercising their rights under the FMLA." *Id.* And, so, an interference claim brought complaining of an employer's violation of an employee's proscriptive rights requires a showing of intentional discrimination. *Haley v. All. Compressor LLC*, 391 F.3d 644, 650-51 (5th Cir. 2004); *see also DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 491 (5th Cir. 2018); *Campos*, 10 F.4th at 527-30.

As discussed below, the Court should find that Roncone has pleaded sufficient facts to allege FMLA interference and discrimination claims.

## I.   <u>FMLA Interference Claim</u>

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under the [FMLA]." 29 U.S.C. § 2615(a)(1); *see also Martin*, 2024 WL 2853951, at *6.

"To establish a prima facie case of interference under FMLA, a plaintiff must show: (1) he was an eligible employee; (2) his employer was subject to the FMLA's requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave, and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Blakely v. GoLabs, Inc.*, No. 3:21-cv-2422-L, 2023 WL 6139456, at *10 (N.D. Tex. Aug. 17, 2023); *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

UTSW contends that Roncone fails to state an FMLA interference claim because he does not sufficiently allege (1) that he was entitled to FMLA leave, (2) that he gave proper notice of his intention to take FMLA leave, and (3) that his employer denied him the benefits to which he was entitled under the FMLA. *See* Dkt. No. 25 at 10-15.

## A. Entitlement to FMLA Leave

The FMLA provides eligible employees a total of 12 workweeks of leave during any 12-month period "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C).

"The term 'spouse' means a husband or wife, as the case may be." § 2611(13). The Department of Labor further clarifies the term:

> [H]usband or wife refers to the other person with whom an individual entered into marriage as defined or recognized under state law for purposes of marriage in the State in which the marriage was entered into or, in the case of a marriage entered into outside of any State, if the marriage is valid in the place where entered into and could have been entered into in at least one State. This definition includes an individual in a same-sex or common law marriage that either:
>
> (1) Was entered into in a State that recognizes such marriages; or
> (2) If entered into outside of any State, is valid in the place where entered into and could have been entered into in at least one State.

29 C.F.R. § 825.102.

And, so, when a couple enters a common law marriage in Texas, one spouse may apply for FMLA leave to care for the other. *See id.*; *see also* § 2612(a)(1)(C).

Under Texas law, one way to enter into a valid marriage is by an informal marriage, also known as a common law marriage. *See* TEX. FAM. CODE § 2.401(a); *Stuberg v. Colvin*, No. 3:15-cv-3505-D, 2016 WL 3745681, at \*2 (N.D. Tex. July 13, 2016). The existence of a common law marriage is "closely scrutinized by the courts." *Brooks v. State*, 686 S.W.2d 952, 954 (Tex. Crim. App. 1985).

A common law marriage exists if the parties can show that: (1) they agreed to be married, (2) lived together as husband and wife, and (3) represented to others that they were married. *See* TEX. FAM. CODE § 2.401(a)(2); *see also Burden v. Burden*, 420 S.W.3d 305, 308 (Tex. App. – Texarkana 2013, no pet.). "An informal marriage does not exist until the concurrence of all three elements." *Stuberg*, 2016 WL 3745681, at \*2 (quoting *In re C. M. V.*, 479 S.W.3d 352, 360 (Tex. App. – El Paso 2015, no pet.). "These three elements can be proved by direct or circumstantial evidence." *Id.*

An agreement to marry is present when each party "intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife." *Eris v. Phares*, 39 S.W.3d 708, 714 (Tex. App. – Houston [1st Dist.] 2001, pet. denied) (citing *Burden v. Burden*, 420 S.W.3d 305, 308 (Tex. App. – Texarkana 2013, no pet.). "An agreement to be married cannot be inferred from the mere evidence of cohabitation and representations of marriage to others, but such evidence may be circumstantial evidence of an agreement to be married." *In re C. M. V.*, 479 S.W.3d at 360 (citing *Russell v. Russell,* 865 S.W.2d 929, 933 (Tex. 1993)).

To establish a valid common law marriage, the parties must also live together as husband and wife after agreeing to be married. *See* TEX. FAM. CODE § 2.401(a).

Cohabitation "need not be continuous for a couple to enter into a common-law marriage." *Small v. McMaster*, 352 S.W.3d 280, 284 (Tex. App. – Houston [14th Dist.] 2011, pet. denied). Sufficient cohabitation is determined on a case-by-case basis. *See Omodele v. Adams*, No. 14-01-00999-CV, 2003 WL 133602, at *2 (Tex. App. – Houston [14th Dist.] 2003, no pet.). And, like the other two elements of common law marriage, it "is a question of fact." *Faglie v. Williams*, 569 S.W.2d 557, 565 (Tex. App. – Austin 1978, writ ref'd n.r.e.).

To satisfy the third element, a party must show that the couple "represented to others that they were married." *Thomas v. Doolittle*, No. 03-23-00498-CV, 2024 WL 4394315, *8 (Tex. App. – Austin Oct. 4, 2024) ("[t]he statutory requirement of 'represented to others' in subsection 2.402(a)(2) is synonymous with 'holding out to the public.') (quoting *Eris*, 39 S.W.2d at 714).

The analysis "turns on whether the couple had a reputation in the community for being married." *Small*, 352 S.W.3d at 285. And "[p]roving such a reputation requires that the couple consistently conducted themselves as husband and wife in the public eye or that the community viewed them as married." *Id.* (cleaned up).

Establishing representation requires showing "more than occasional references to each other as 'wife' and 'husband.'" *Thomas*, 2024 WL 4394315, at *8; *Smith v. Deneve*, 285 S.W.3d 904, 910 (Tex. App. – Dallas 2009, no pet.). But representation can be shown "by conduct and actions of the parties. Spoken words are not necessary to establish representation as husband and wife." *Id.*

The Court previously found that Roncone failed to satisfy the first two elements of a common law marriage because his factual allegations were insufficient to allow the Court to draw a reasonable inference that he and his purported spouse agreed to be married and that they lived together as husband and wife. *See* Dkt. No. 18 at 10-13.

Roncone attempts to cure the identified deficiencies in his Second Amended Complaint by including additional facts regarding his alleged common law marriage. *See* Dkt. No. 20.

Roncone alleges that he

met Sabrina Becerra at work in approximately May 2021, and then began dating in approximately January 2022. Over the next few months, he met her family. By June 2022, they both felt there were ready to move their relationship forward. At that time, Plaintiff went so far as to contact Sabrina's father, Andrew Martinez, and asked permission to move in with his daughter, since the house was formally owned by Mr. Martinez. Plaintiff represented that they would be living together as husband and wife. Mr. Martinez gave his blessings, and Plaintiff prepared to move in with Sabrina.

*Id.* at 2-3.

Roncone further alleges that (1) he began openly calling Ms. Becerra's cousin, who he recommended for a job at UTSW, "primo" (Spanish for "cousin") in front of other UTSW employees, (2) he and Ms. Becerra attending a wedding in July 2022 and introduced themselves as husband and wife, (3) Ms. Becerra completed school registration paperwork for her daughter from an earlier marriage that showed they all lived together and described Roncone as a guardian and step-father, and (4) Ms. Becerra appears in at least one photograph wearing a wedding ring. *See id.* at 3.

Based on these allegations, the undersigned can reasonably infer that Roncone and his purported spouse agreed to be married and that they lived together as husband and wife. And, so, the Court should find that he has satisfied the first two element of a common law marriage.

As to the third element, UTSW argues in its motion to dismiss that Roncone has "not alleged sufficient facts to show that he held himself out to the public as married." Dkt. No. 25 at 11.

But the Court previously found that Roncone's allegations, which showed that Roncone talked about his purported spouse with his supervisor and notified him regarding absences concerning his purported spouse's medical recovery, were sufficient to show that he represented to others that he was married. *See* Dkt. No. 18 at 13-14. And the additional facts regarding Roncone's alleged common law marriage discussed above bolster the sufficiency of his allegations as to the third element.

And, so, Roncone's Second Amended Complaint satisfies all three elements of a common law marriage. And the Court should find that Roncone has demonstrated that he was entitled to FMLA leave.

The undersigned turns to the other required elements of an FMLA interference claim.

**B.  Notice to Employer**

As a general rule, in cases involving foreseeable absences, the FMLA requires an employee to provide the employer with at least 30 days of advance notice. *See* 29 C.F.R. § 825.302(a); *Greenwell v. State Farm Mut. Auto. Ins. Co.*, 486 F.3d 840, 842

(5th Cir. 2007). For unforeseeable absences, "an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. 825.303(a); *see also Greenwell*, 486 F.3d at 842.

Employees need not "expressly assert rights under the FMLA or even mention the FMLA but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303(b). "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 977 (5th Cir. 1998) (cleaned up).

Roncone alleges that he requested FMLA forms to care for his common law wife from his supervisor in December 2022 but that his supervisor incorrectly advised him that he did not qualify for FMLA because he and his wife were not legally married. *See* Dkt. No. 20 at 3-4.

UTSW asserts that Roncone's conversation with his supervisor in December 2022 is insufficient to be construed as an FMLA leave request because Roncone did not provide facts showing he put UTSW on notice that he had entered into a common law marriage and that his common law wife had a serious health condition. *See id.* at 14. And, so, UTSW contends that it did not receive sufficient notice from Roncone until May 2023 when he first submitted FMLA paperwork. *See* Dkt. No. 25 at 13-15.

But there is no legal authority supporting UTSW's contention that it is Roncone's burden to show that he entered into a common law marriage and that his

spouse had a serious health condition when the supervisor erroneously informed him that he did not qualify for FMLA upon receiving the initial request.

Roncone's allegations explaining his purported wife's condition and expressly asking for FMLA forms from his supervisor in December 2022 sufficiently show that he gave proper notice of an intention to take FMLA leave. *Cf. Blakely,* 2023 WL 6139456, at *11 ("For example, he alleges no facts to at least support an inference that he actually requested leave, when he requested leave, or from whom he requested leave.").

And, so, the Court should find that Roncone has established this element.

## C. <u>Denial of Benefits</u>

UTSW contends that Roncone has failed to allege that UTSW interfered with his FMLA rights because it approved all FMLA leave that Roncone ultimately requested. *See* Dkt. No. 25 at 15. Specifically, Roncone "only requested FMLA leave for coverage of April absences when he was told he was going to be fired for them." Dkt. No. 35 at 16.

But, as conveyed by Roncone's counsel at oral argument, Roncone is alleging the following instances of interference: (1) UTSW's failure to inform him of his right to FMLA leave when he approached his supervisor in December 2022 seeking to care for his common law wife and termination for those absences and (2) UTSW dismissing Roncone following FMLA leave when he independently learned of his rights and applied for FMLA coverage on May 1, 2023. *See* Dkt. No. 20 at 5-7; Dkt. No. 35 at 16-17.

These allegations and, specifically, termination for absences dating back to December 2022 that would have otherwise been protected under the FMLA had Roncone not been misinformed by his supervisor, allow the undersigned to draw a reasonable inference that UTSW interfered with Roncone's FMLA rights.

And, so, the Court should find that Roncone has established this element and sufficiently pleaded an FMLA interference claim.

## II.    <u>FMLA Discrimination Claim</u>

To state a prima facie case for discrimination or retaliation under FMLA, a plaintiff must show "(1) he is protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave." *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 305 (5th Cir. 2021).

Roncone alleges that UTSW discriminated against him "by dismissing [him] from work following medical leave when he independently learned of his rights, and applied for FMLA coverage on May 1, 2023." Dkt. No. 20 at 6-7. He also alleges further discrimination based on UTSW's failure to reinstate him following the use of leave. *See id.* at 7.

At the outset, UTSW contends that Roncone's claim fails because he has not shown that he was entitled to FMLA leave based on a common law marriage. *See* Dkt. No. 25 at 17.

But, as discussed above, Roncone's Second Amended Complaint includes sufficient facts to demonstrate that he was entitled to FMLA leave based on a common law marriage. And, so, Roncone's discrimination claim does not fail for that reason.

UTSW does not dispute that Roncone suffered an adverse employment decision but challenges the third element of Roncone's claim.

Specifically, UTSW asserts that Roncone has neither alleged facts that show he was treated less favorably than an employee who had not requested leave under the FMLA, nor alleged facts that would establish that UTSW's decision to terminate Plaintiff was "because of" his request for leave. *See id.*

Roncone contends that there is a "close temporal proximity" to his application for FMLA benefits and his firing and that "in the renewed decision to fire, [UTSW] reference[s] dates going back to December, which arguably should have been protected." Dkt. No. 35 at 19. And, so, Roncone asserts that there is a "plausible record of causation between FMLA protected leave and the termination" because arguably protected absences were included in the decision to fire him. *Id.*

"When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the temporal proximity between the FMLA leave, and the termination. Moreover, the plaintiff does not have to show that the protected activity is the only cause of her termination. The plaintiff is, however, required to show that the protected activity and the adverse employment

action are not completely unrelated." *Mauder v. Metro. Transit Auth. of Harris Cnty.*, Tex., 446 F.3d 574, 583 (5th Cir. 2006).

Here, based on Roncone's alleged timeline of events, the undersigned can reasonably infer that his termination was not completely unrelated to his exercise (in May 2023) or attempted exercise (in December 2022) of his FMLA rights. *Accord Hester*, 11 F.4th at 306 (finding that the alleged timeline of events indicated that the employer's termination decision was not "completely unrelated" to plaintiff's exercise of his FMLA rights).

And, so, the Court should find that Roncone has sufficiently pleaded an FMLA discrimination claim.

## Conclusion

For the reasons explained above, the Court should deny UTSW's motion to dismiss [Dkt. No. 25] in its entirety.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     DATED: May 28, 2025

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE